IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CONNIE DEVLYNE et al.,

    Plaintiffs,                                            CIV. NO. S-10-0286 MCE GGH

    vs.

LASSEN MUNICIPAL UTILITY DISTRICT,

    Defendant.                                           ORDER

_____/

       Before the Court is defendant Lassen Municipal Utility District's ("LMUD") motion for a protective order regarding the deposition of LMUD's former General Counsel, Jamie Jones. After reviewing the papers and hearing oral argument, the court now issues the following order.

BACKGROUND

       Plaintiffs Connie Devlyne ("Devlyne"), Paul Glau ("Glau"), and Krsto Knezevich ("Knezevich") filed this action on February 3, 2010, and the operative second amended complaint was filed August 26, 2010. The discovery cut-off date is November 4, 2011.

Devlyne has been employed by LMUD since 1975.[1]  She alleges that she has been subject to a hostile work environment throughout her career because of her gender.  Devlyne claims that although she repeatedly reported the misconduct to LMUD management, they failed to take adequate action.  Instead, her manager allegedly attempted to intimidate her into not filing a complaint.  After she made a written complaint alleging a sexually hostile work environment in February 2008, LMUD hired an investigator, Richard Anderson, who ultimately concluded that Devlyne's complaints were without merit.  However, Devlyne contends that the investigator conducted only the most cursory investigation.  Devlyne states that LMUD later retaliated against her for her complaints by diminishing her work conditions and relocating her to a less safe work area.

Glau worked for LMUD since 1991, but retired effective December 31, 2009.  He alleges that his retirement was the result of the hostile work environment he experienced in retaliation for his having supported and participated in Devlyne's sexual harassment complaint, as well as his own good faith conduct in notifying the proper regulatory authorities about hazardous substances at a storage site.  Glau claims that former General Manager Ray Luhring informed Glau that if he did not agree to retire at the end of 2009, Glau would be fired.

Knezevich commenced his employment at LMUD in 1997.  Knezevich claims that he is currently physically disabled because of the effects of LMUD's conduct in unfavorably altering his job responsibilities on account of his having supported and participated in Devlyne's sexual harassment complaint, as well as his association with Glau, and his own good faith conduct in making complaints about hazardous substances.

On August 23, 2011, plaintiffs issued and served a subpoena for the deposition of LMUD's former General Counsel, Jamie Jones ("Jones").  Plaintiffs seek Jones's testimony regarding several matters including, but not limited to: (1) meetings to discuss the departure of

---

[1] The alleged facts are taken from plaintiffs' second amended complaint.

former LMUD General Manager Frank Cady; (2) discussions between Jones and the investigator hired to investigate Devlyne's harassment complaint; (3) missing complaint documents Cady allegedly received from Devlyne; and (4) conversations between Jones and Glau.  The parties have agreed to a continued deposition date of October 19, 2011 in light of this motion.

DISCUSSION

The Federal Rules of Civil Procedure provide that a court may make any order limiting discovery which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  To obtain a protective order, the party resisting discovery or seeking limitations must, under Rule 26(c), show good cause for its issuance.  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman v. Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).

As an initial matter, LMUD claims that a protective order is warranted under Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986).  Under Shelton, the party seeking to depose the opposing party's counsel has the burden to show three elements:

> (1) [n]o other means exist to obtain the information than to depose opposing counsel [citation omitted]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

Id. at 1327.  However, the Shelton criteria apply only when trial and/or litigation counsel are being deposed and the questioning would expose litigation strategy in the pending case.  U.S. v. Philip Morris Inc., 209 F.R.D. 13, 17 (D.D.C. 2002); Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002) (stating that the Shelton test "was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.")  Here, LMUD has established no factual foundation to

demonstrate that Jones is or was trial/litigation counsel for LMUD. Likewise, no foundation exists that Jones was so intimately involved with the litigation that taking her deposition would be akin to deposing one's litigation counsel. Simply being a former general counsel for a party is insufficient to bring one under the protection of the Shelton rule. Moreover, Jones is alleged to be a percipient witness to facts relevant to plaintiff's claims – facts which are outside the litigation proceedings. Accordingly, plaintiffs are not required to satisfy the three Shelton criteria before deposing Jones.

Turning to the substantive matters on which Jones's testimony is sought, LMUD argues that good cause for a protective order exists primarily based on the risk that the attorney-client privilege would be invaded in the course of the deposition. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." U.S. v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (internal citations omitted). "Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." U.S. v. Ruehle, 583 F.3d 600, 608 (9th Cir. 2009). "Under federal law, the attorney-client privilege is strictly construed." Id. at 609. The Ninth Circuit has set forth the elements of the attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. Richey, 632 F.3d at 566. "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." Id.; see also Ruehle, 583 F.3d at 609 (stating that the party asserting the privilege is "obliged by federal law to establish the privileged nature of the communications and, if necessary, to segregate the privileged information from the non-privileged information").

Courts have recognized that in-house counsel warrant heightened scrutiny in this regard, i.e., in-house counsel often wear a non-legal business hat, and communications in that

capacity are not privileged.  Oracle America, Inc. v. Google, Inc., 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011).  "In-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters.  When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore must make a clear showing that the speaker made the communication for the purpose of obtaining or providing *legal* advice."  Id. (internal citations omitted) (emphasis in original).

Here, for the reasons discussed below, LMUD has failed to provide a proper factual basis for asserting the attorney-client privilege as to the various categories of information at issue.

### (1) Meetings to discuss the departure of Cady

Plaintiffs wish to question Jones regarding discussions at a series of meetings in a park attended by a substantial portion of the workforce in late 2007.  According to Knezevich, who allegedly attended the first of the three meetings, members of the line crew demanded the termination of former General Manager Frank Cady, who had responded sympathetically to Devlyne's complaints, as well as the termination of Glau.  Glau also claims that Jones confirmed that these demands were made at the meetings.

LMUD, however, claims that the information is protected by the attorney-client privilege.  The problem with LMUD's assertion of the privilege is that it has not made any showing that Jones's purpose in attending the meeting was to provide legal advice or that the purpose of the large group meeting was to seek legal advice from Jones.  "In the business world, a meeting is not automatically privileged simply because legal counsel is present."  See North Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1127 (N.D. Cal. 2003); Hinsdale v. City of Liberal, 961 F. Supp. 1490, 1494 (D. Kan. 1997) (holding that "the mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged"); see also Ruehle, 583 F.3d at 607 ("The fact that a person is a lawyer does not make all communications with that person privileged.")  Based on the number of people in attendance and

the venue, it is highly unlikely that these meetings involved potentially privileged discussions with Jones.  In any event, due to the lack of a foundation presented by LMUD in its part of the joint statement establishing the improbable, any asserted attorney-client privilege has been waived.  Accordingly, plaintiffs are permitted to question Jones as a percipient witness regarding discussions at these meetings in the park.

### (2) Discussions between Jones and the investigator

LMUD hired a non-attorney, Richard Anderson, to investigate Devlyne's harassment complaint.  At Anderson's deposition, he testified that he had wanted to interview Cady, but that either Jones or Ray Luhring , a former General Manager at LMUD, told him that Cady was unavailable.  Cady later allegedly stated that he was never contacted at all, but would have been eager to talk to the investigator.  Given that Luhring already testified that he was not the person who told Anderson that Cady was unavailable, plaintiffs now want to ask Jones whether she indicated to Anderson that Cady was unavailable.  Plaintiffs argue that it is an inquiry of substantial bearing on the adequacy of the employer's response to Devlyne's sexual harassment complaint.

LMUD contends that Jones's discussions with Anderson are protected by the attorney-client privilege, because Anderson was a third-party investigator retained by LMUD to investigate Devlyne's complaint.  However, the court does not have a sufficient factual basis in the record to conclude that the discussions were privileged, i.e., confidential communications to or from a *client*, or dissemination of client information which would be privileged.  To the contrary, plaintiffs' proposed line of questioning regarding the availability of a potential witness (Cady) does not appear to implicate any confidential communications made to obtain legal advice from Jones.  It may be that some communications between the investigator and Jones are privileged, but LMUD must allow plaintiffs' counsel to lay a proper foundation for his questions

\\\\

\\\\

in this area before asserting the attorney-client privilege as to a particular communication. If immune from discovery at all, such would stem from the work product doctrine.[2]

LMUD does claim that the information sought is subject to work product protection. "To qualify for work-product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." Oracle America, Inc., 2011 WL 3794892, at *5. "The party seeking the protection bears the burden of showing that the disputed materials fall within its scope." Id. Moreover, the nature of the investigation is critical. That is, if the investigation is undertaken prior to litigation because it is compelled by company practice, policy, or otherwise by law, the investigation at best has a dual purpose precluding in most instances the assertion of work product immunity. See Fru-Con Const. v. SMUD, 2006 WL 2050999, at *3 (E.D. Cal. 2006).

Again, the lack of any factual foundation demonstrating the applicability of work product precludes the granting of a blanket protective order as desired by LMUD. Plaintiff's counsel may ask questions at the October 19 Jones deposition about the investigation/investigator after inquiring about the context of statements/communications through proper foundational questions.[3]

### (3) Devlyne's missing complaint documents

According to plaintiffs, when Devlyne made her original sexual harassment allegations, Cady instructed her to compile a collection of documents regarding her sexual harassment by co-workers, which she then provided to Cady. The documents, which Cady stated were on his office desk when he was fired, have disappeared, and plaintiffs want to question

---

[2]The undersigned will not find here that the privilege has been waived because of the lack of foundation. Unlike the "park discussion," the possibility of a privileged discussion is not remote.

[3]It is highly doubtful that any statement by Jones as to Cady's availability or unavailability can be construed as work product.

Jones about whether she knows what happened to the documents.

Plaintiffs are certainly entitled to question Jones regarding her knowledge of the documents' whereabouts, whether she knows if the documents were retained, lost, or destroyed, and what, if anything, she did with the documents. LMUD's argument that this information is somehow privileged is frivolous, because her actions *per se* do not involve confidential *communications*. Assuming Jones made communications to her client about the documents, such communications may be privileged, but the foundational facts regarding such communications must first be developed in the deposition.

### (4) Conversations between Jones and Glau

Additionally, LMUD opposes questions by plaintiffs regarding Jones's conversations with Glau that may relay privileged communications Jones had with other LMUD employees. Again, LMUD should assert any objections based on the attorney-client privilege after plaintiffs' counsel has had an opportunity to lay an appropriate foundation. Indeed, this would be the proper method to follow with respect to all other lines of inquiry during the deposition.

Finally, the court addresses the role of Jones at the deposition. LMUD's counsel at hearing argued that she had no control over former general counsel Jones' assertion (or not) of the attorney-client privilege at the deposition. To the contrary, the client holds the attorney-client privilege, and not the attorney. See U.S. v. Fisher, 692 F. Supp. 488, 494 (E.D. Pa. 1988) ("It is well established that the attorney-client privilege belongs to the client."). The client's representative at the deposition is LMUD's present litigation counsel, and *he or she* is the person authorized to assert the privilege, or not, on behalf of the client. The former general counsel Jones shall abide by her client's representative's instructions.[4]

---

[4]This is not the situation where Jones may be asked to disclose potentially privileged information in the absence of her client or any authorized representative of her client. Certainly, in such a situation, Jones would have the right to assert the privilege on behalf of her former client. However, her client will not be absent at the deposition. The fact that an authorized

8

CONCLUSION

In sum, LMUD has failed to show good cause for a protective order. Accordingly, IT IS ORDERED that:

1. LMUD's motion for a protective order (dkt. no. 27) is denied.

2. The deposition of Jamie Jones shall be conducted on October 19, 2011 in accordance with this order.

3. If any further discovery dispute arises at the deposition that would necessitate motion practice, the parties shall file their joint statement by October 27, 2011 to allow for a hearing prior to the discovery cut-off date.

DATED: October 14, 2011

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:wvr
Devlyne.286.mot.po.wpd

---

representative of the client is present at the deposition prevents Jones from being a law unto herself regarding assertion of the privilege. Whether litigation counsel, the client's presently authorized representative, makes the right choice in deciding to assert a privilege is none of Jones's business at this point.

9